IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HELEN STOKES, )<br>on behalf of herself and all others )<br>similarly situated, )<br>       ) <br>       Plaintiff, )<br>   vs. )<br>       )<br>REALPAGE, INC. )<br>       )<br>       Defendant. )<br>       ) | C. A. No. 15-<br><br>CLASS ACTION<br><br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

### I.   Preliminary Statement

1.  This is a consumer class action brought for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x (FCRA). Plaintiff brings this action on behalf of consumers nationwide who have been the subject of misleading and inaccurate background reports sold by the Defendant RealPage, Inc. (RealPage) to landlords. In violation of FCRA section 1681e(b), Defendant has adopted and maintained a policy and practice of failing to timely update the criminal record information it maintains to eliminate records of cases that have been expunged, thus not accurately reflecting the final disposition of these cases. Furthermore, Defendant systemically violates FCRA section 1681g(a) by failing to provide complete and accurate disclosures of all information Defendant maintains about consumers to those consumers upon request.

Defendant's practices harms consumers seeking residential leases by prejudicing their prospective landlords with inaccurate adverse information, depriving consumers of valuable congressionally-mandated information, and harms interstate commerce as a whole.

## II.  Parties

2. Plaintiff Helen Stokes is an adult individual who resides in Philadelphia, Pennsylvania.

3. Defendant RealPage, Inc. is a consumer reporting agency that regularly conducts business in the Commonwealth of Pennsylvania, and which maintains a principal place of business at 4000 International Parkway, #1000, Carrolton, TX  75007-1913.

## III.  Jurisdiction and Venue

4. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §1331.

5. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## IV.  Factual Allegations

**A.  Defendant's Practices As A Consumer Reporting Agency**

6. At all times pertinent hereto, RealPage was a consumer reporting agency (CRA) as defined by section 1681a(f) of the FCRA.

7. Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by CRAs, including public record information.

8. Defendant obtains distilled and incomplete public record information, including criminal record history, from third party databases and courthouses and maintains such data in consumer files that it creates and assembles.

9. Defendant sells such consumer files to landlords wishing to investigate the background of consumers applying for residential leases.

10. As a CRA, Defendant is required to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.  15 U.S.C. § 1681e(b).

11. Further, the FCRA unambiguously requires CRAs such as Defendant to clearly and accurately disclose to consumer all information that the CRA maintains about them, including the sources that supplied the information. 15 U.S.C. § 1681g(a); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-12 (3d Cir. 2010); *Dennis v. Trans Union, LLC*, 2014 WL 5325231 (E.D. Pa. Oct. 20, 2014).

12. Defendant does not, however, maintain reasonable procedures designed to assure maximum possible accuracy. Based upon a common policy and practice, Defendant regularly and illegally reports criminal records that have been expunged, sealed, or otherwise removed by court order. In some situations, the report of an expunged case deprives the individual of a report that he has no criminal record.

13. Defendant also fails, as a matter of common policy and procedure, to provide consumers who request file disclosures with all information Defendant maintains about the requesting consumer, including never disclosing to consumers the source of the criminal record information it collects and reports about them.

14. Defendant's practices not only violate the FCRA as a matter of law, the practices exact serious consequences on consumer job applicants and interstate commerce. Consumers who have obtained the deletion of negative background history are prejudiced in their ability to obtain leased housing despite the fact that negative information no longer appears in the public record, and are deprived of complete information regarding the nature and source(s) of the information Defendant maintains and sells about them.

**B.     The Experience Of The Representative Plaintiff**

15.     Helen Stokes is 63 years old.  She never had any criminal justice involvement until September, 2008, after which she was arrested twice on criminal charges that arose from her deteriorating marriage.

16.     In September of 2008, Ms. Stokes was arrested in connection with a domestic dispute and charged with aggravated assault and other lesser charges.  The charges were dismissed for lack of evidence.

17.     In June of 2010, Ms. Stokes was arrested for theft offenses after taking her husband's ATM card from their joint bank account.  The charges were subsequently withdrawn.

18.     The records of both offenses appeared under Ms. Stokes married name of Helen Marie Davis.  Ms. Stokes resumed her maiden name Stokes after her divorce.

19.     These two cases were Ms. Stokes's only arrests.  She has never been convicted of a crime.

20.     By Orders of the Court of Common Pleas, Philadelphia County, dated March 31, 2014, the records of both the 2008 and 2010 arrests and charges were ordered expunged (the Expungement Orders).  Certified copies of the Expungement Orders were served on the Philadelphia Police Department, the Pennsylvania State Police (PSP), the Administrative Office of Pennsylvania Courts (AOPC) Expungement Unit, and the First Judicial District of Pennsylvania, Data Processing Unit.

21.     The Expungement Orders required the arresting agency to destroy or deliver to Ms. Stokes or her representative all criminal records, fingerprints, photographic plates and photographs pertaining to the charges which resulted from the arrests, and also ordered the PSP to request the

Federal Bureau of Investigation to return to them all records pertaining to the arrest, which were ordered to be destroyed upon receipt.

22. The 2008 and 2010 arrests of Ms. Stokes were removed from the AOPC database within days of the entry of the Expungement Orders.

23. On June 10, 2014, the PSP certified that all criminal record history pertaining to the 2008 and 2010 arrests of Ms. Stokes was expunged from their files.

24. On June 23, 2014, the Philadelphia Police Department certified that all criminal record history pertaining to the 2008 and 2010 arrests of Ms. Stokes was expunged from their files.

25. Since the implementation of the Expungement Orders, Ms. Stokes has had a clear criminal record.

26. After separating from her husband, Ms. Stokes no longer had enough income to maintain her house. Consequently, the house went into foreclosure proceedings. As a result of her impending need to leave her house, Ms. Stokes has actively sought senior housing.

27. In or around October 2014, Ms. Stokes applied for a residential lease at Greenway Presbyterian Apartments (Greenway), a senior housing facility, in Philadelphia, PA.

28. On or about October 20, 2014, in connection with Ms. Stokes's application, RealPage prepared and sold a consumer report about Ms. Stokes to Greenway.

29. The October 20, 2014 report improperly and inaccurately reported both the 2008 and 2010 arrests and charges that had been expunged in March 2014.

30. The public sources of information in Pennsylvania from which CRAs such as RealPage can obtain information used for criminal background checks are court records maintained by AOPC and law enforcement records maintained by the central repository of the PSP.

31. In Pennsylvania, criminal court records are made publicly available at no cost and with no restrictions in a database maintained by AOPC and available on its website. These records can be accessed by anyone within seconds from the AOPC website.

32. By contrast, a request for information from the PSP database costs $10.00. Moreover, if the person's record shows arrests or convictions, there will not be a response for at least two to three weeks, and often longer. For these reasons, CRAs seldom order or wait for PSP records before generating a background check, unless the job for which a person is being screened requires a PSP record check as a matter of law.

33. AOPC also provides for bulk purchases of its criminal record information. CRAs as a matter of general practice use the AOPC database as their public source of criminal history data in Pennsylvania.

34. As a general practice, expunged criminal charges in Philadelphia are hidden from public view in AOPC's database within days of an expungement order. They are completely eliminated from the database that is provided to bulk purchasers shortly thereafter.

35. As part of its bulk sale of criminal record information, and in a concentrated effort to avoid the reporting of expunged records, the AOPC also provides a "LifeCycle file" on a weekly basis. The LifeCycle file contains a list of cases that bulk data subscribers must remove from their databases, including expunged cases. In other words, AOPC specifically identifies expunged cases to the purchasers of its bulk data so that they and their downstream users will remove the cases from their databases.

36. AOPC's contract with its bulk data subscribers requires them to retrieve and access the LifeCycle file. Failure to comply can result in termination of the contract.

37. Upon information and belief, Ms. Stokes's expunged charges were removed from public view in AOPC's database within days of the March 31, 2014 Expungement Orders. They were removed entirely from the database shortly thereafter.

38. As of the removal from public view of the expunged charges from AOPC's database accessible on AOPC's website, any preparer of a background check that maintained reasonable procedures to assure accuracy would have been aware that it was no longer appropriate to report the expunged charges.

39. Even if a preparer were to rely instead on bulk data obtained from AOPC, the preparer would know that expunged charges had been eliminated if it properly updated its database, through application of the LifeCycle file or otherwise.

40. Defendant reported the expunged charges on Ms. Stokes's background check report more than six months after these cases had been hidden from public view, eliminated from AOPC's database, and reported for deletion in a LifeCycle file.

41. In preparing a report on Ms. Stokes in October 2014, Defendant did not search any public records in which Ms. Stokes's charges had not yet been expunged. Ms. Stokes's charges had been eliminated from all public records by that time.

42. Instead, Defendant reported the expunged cases from its database, or from the database of a third-party vendor, without any effort to learn whether those cases had been expunged.

43. As a result of the inaccurate report, Greenway denied Ms. Stokes's rental application.

44. Ms. Stokes pressed Greenway for the source of the consumer report that had been used to turn her down for housing based on her criminal record. By letter dated December 23,

2014, Greenway identified RealPage to Ms. Stokes as the source of the report. However, Greenway did not provide a copy of the report to her.

45. On January 8, 2015, with the assistance of counsel, Ms. Stokes requested from RealPage a copy of the consumer report that it had provided to Greenway.

46. On January 9, 2015, a representative of RealPage contacted Ms. Stokes. Ms. Stokes explained that she believed that RealPage had improperly reported her expunged cases to Greenway, although she had not been able to obtain a copy of the report by that time. RealPage understood this discussion to be a dispute under Section 1681i of the FCRA.

47. On January 14, 2015, RealPage sent Ms. Stokes's counsel corrected copies of the consumer report prepared for Greenway and two other apartment complexes. However, it did not provide the original inaccurate report.

48. In or around January 2015, Ms. Stokes applied for a residential lease at the Scottish Rite Tower, another senior housing facility, in Philadelphia, PA.

49. On or about January 13, 2015, and after Ms. Stokes had made her dispute of the report provided to Greenway, RealPage prepared and sold a consumer report about Ms. Stokes to Scottish Rite Tower which, like the report sold to Greenway, improperly included the expunged arrests from 2008 and 2010.

50. As a result of the inaccurate report, Scottish Rite Tower denied Ms. Stokes's rental application.

51. In late January, 2015, Ms. Stokes requested a complete copy of her consumer file.

52. On February 3, 2015, RealPage sent Ms. Stokes a document purporting to be a file disclosure that did not contain any criminal history information.

53. On February 18, 2015, counsel for Ms. Stoke made a second request for a full file disclosure. That same day, RealPage again sent Ms. Stokes a document purporting to be a "full file disclosure" and that did finally show that it had reported the expunged cases to Greenway and Scottish Rite Tower, but that failed to disclose all of the information RealPage maintains about her, including failing to identify the source of the criminal records previously reported to Greenwood and Scottish Rite Tower about Ms. Stokes.

54. RealPage's failure to provide a full file disclosure was harmful to Ms. Stokes, because she was not entitled to a pre-adverse action notice and copy of the report before the senior housing facilities made their decisions on her rental applications, because this legal obligation applied only when a consumer report is obtained for employment purposes. *See* 15 U.S.C. § 1681b(b). Consequently, by failing to respond immediately and correctly to Ms. Stokes's request for all information that RealPage maintained about her, RealPage impeded her from trying to advocate on her own behalf to try to obtain admission into the senior housing that she so desperately needs.

55. At all times pertinent hereto, Defendant's conduct was a result of its deliberate policies and practices, was willful, and carried out in reckless disregard for a consumer's rights as set forth under sections 1681e(b) and 1681g(a) of the FCRA, and further assumed an unjustifiably high risk of harm.

56. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

## V. Class Action Allegations

57. Plaintiff brings this action individually and as a class action, pursuant to Rules 23(a) of the Federal Rules of Civil Procedure, on behalf of the following Classes:

  (a) **Expungement Class:** All natural persons with an address in the United States and its Territories about whom, beginning two years prior to the filing of this Complaint and continuing through the resolution of this action, Defendant prepared a consumer report which included information regarding one or more criminal case which had been expunged, sealed, or otherwise removed from public dissemination at the time the report was prepared.

  (b) **Disclosure Class:** All natural persons with an address in the United States and its Territories who, beginning two years prior to the filing of this Complaint and continuing through the resolution of this action, made a request to Defendant which constituted or which Defendant treated as a request for a full file disclosure, and to whom Defendant sent a document which did not include all of the information Defendant maintained about the requesting consumer.

58. The Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that the Classes numbers in the thousands. Defendant sells criminal history record information to thousands of businesses throughout the country, and its reports to such businesses are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports. Furthermore, upon information and belief, Defendant prepares and sends its disclosures to consumers using standardized policies and procedures.

59. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal question with respect to the Expungement Class is whether Defendant violated the FCRA by failing to follow reasonable procedures to assure the maximum possibly accuracy of the information contained in its reports with respect to the removal of expunged or sealed cases. This principal question with respect to the Disclosure Class is whether Defendant violated the FCRA by failing to provide all of the

information it maintains about consumers upon request, including the source(s) of criminal record information.

60. Plaintiff's claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same legal theories.

61. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this claim.

62. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

63. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is slight because the maximum statutory damages are limited to between $100 and $1,000 under the FCRA. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendant's records.

## VI. Claims

### Count One – FCRA Section 1681e(b) (Class Claim)

64. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

65. At all times pertinent hereto, Defendant was a "person" and "consumer reporting agency" (CRA) as those terms are defined by 15 U.S.C. §§ 1681a(b) and (f).

66. At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

67. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Defendant is liable to the Plaintiff for willfully and/or recklessly failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom a consumer report relates, in violation of section 1681e(b).

### Count Two – FCRA Section 1681g(a) (Class Claim)

68. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

69. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Defendant is liable to Plaintiff for willfully and/or recklessly failing to provide a complete copy all of the information on her file upon request, in violation of FCRA section 1681g(a).

## VII. Jury Trial Demand

70. Plaintiff demands trial by jury on all issues so triable.

### VIII.   Prayer For Relief

WHEREFORE, Plaintiff seeks judgment in her favor for the following:

(a)   That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel to represent the Classes;

(b)   That an order be entered declaring that Defendant's actions as described above are in violation of the FCRA;

(c)   That judgment be entered against Defendant for statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member or for actual damages, pursuant to 15 U.S.C. § 1681n(a);

(d)   That judgment be entered against Defendant for actual damages, pursuant to 15 U.S.C. § 1681o(a);

(e)   That judgment be entered against Defendant for punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

(f)   That the Court award costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and 1681o; and

(g)   That the Court grant such other and further relief as may be just and proper.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

Dated:   March 25, 2015        BY:    */s/ James A. Francis*
                                                JAMES A. FRANCIS
                                                JOHN SOUMILAS
                                                DAVID A. SEARLES
                                                LAUREN KW BRENNAN
                                                Land Title Building, 19th Floor
                                                100 South Broad Street
                                                Philadelphia, PA 19110
                                                T: (215) 735-8600

13

**COMMUNITY LEGAL SERVICES, INC.**
SHARON M. DIETRICH
1424 Chestnut Street
Philadelphia, PA  19102
T: (215) 981-3700

*Attorneys for Plaintiff*

14